## PINKERTON et al. v. UNITED STATES.

### No. 11006.

Circuit Court of Appeals, Fifth Circuit.

Nov. 10, 1944.

J. M. Pennington, of Jasper, Ala., for appellants.

Jim C. Smith, U. S. Atty., of Birmingham, Ala., for appellee.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

McCORD, Circuit Judge.

W. Daniel Pinkerton and Walter G. Pinkerton were indicted with three others on a conspiracy charge to violate Sections 2810, 2833, 2834, 2803, and 3253 of the Internal Revenue Code of the United States, 26 U.S.C.A.Int.Rev.Code §§ 2810, 2833, 2834, 2803, 3253; 18 U.S.C.A. § 88.

The indictment contained only one count, and charged that the conspiracy set forth had existed continuously from the 12th day of August, 1938, until the 27th day of June, 1943, and within three years of the finding of the indictment which was returned by the grand jury on February 19, 1944. There were nineteen overt acts charged in the indictment, the first six of which, it is without dispute, were committed more than three years before the return of the indictment.

The two Pinkertons were convicted and have appealed.

The evidence, as disclosed by the record, shows that the two Pinkertons are brothers and reside about two hundred yards from each other on a farm a few miles from the town of Fayette, Alabama; that for a number of years they had been engaged in the business of selling whiskey and had been arrested and convicted many times for violating the liquor laws; that Walter Pinkerton denied non-tax paid liquor had been found on his premises and contended that liquors found within the curtilage of his home were on the property of another, the land line running near his house; there was an inhibition against selling spirituous liquors in the county of Fayette, in which the Pinkertons lived, and they had both been convicted in the county courts for violating the liquor laws several times; that W. Daniel Pinkerton had secured internal revenue license to sell liquors each

year for several years; that they not only bought and sold tax paid liquors, but the evidence further disclosed that they had sold non-tax paid liquors and also grain alcohol; that their homes and adjacent premises had been searched many times by officers and that on several occasions they had found non-tax paid whiskey either on the premises or within the curtilage of their homes; that W. Daniel Pinkerton had signed bonds for his brother from time to time when he had been arrested for violating the liquor law. The two Pinkertons when testifying admitted they had been arrested and convicted and had paid fines and served at hard labor for violating the liquor law, but each strenuously denied they had entered into a conspiracy with each other or with either of the three others jointly indicted with them to violate the liquor laws or any law, and that they had not directly or indirectly conspired with any one to violate any law.

■ Objection was made to the introduction of a supplemental transcript of the record which consisted of the requested and refused charges of the defendants, and which was not delivered to the court until after the time in which to submit the transcript. It has, however, reached the court within time to be submitted and heard on the day on which the case was set for trial, and counsel for the Government received a copy in time to fully answer the same. Moreover, it contains a correct transcript of the requested and refused charges. We have made this supplemental transcript a part of the record. 18 U.S.C.A. following section 688, Rule 4. Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037; Ray v. United States, 301 U. S. 158, 57 S.Ct. 700, 81 L.Ed. 976; Forte v. United States, 302 U.S. 220, 58 S.Ct. 180, 82 L.Ed. 209; Kay v. United States, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607; Miller v. United States, 317 U. S. 192, 63 S.Ct. 187, 87 L.Ed. 179.

The indictment was in all respects free from error. The court, however, failed to correctly define the charge of conspiracy as laid in the indictment and to point out to the jury what evidence was necessary to keep the conspiracy alive and bring it within the statute of limitations, and also to limit the evidence as to the overt acts committed before the three year statute ran. The charge was further confusing, we think, for failure to fully instruct the jury that the guilt of the defendants could only be predicated on one or more overt acts proved to have been committed within the three year limit of the statute.

■ "Where the conspiracy contemplates various overt acts and the consequent continuance of the conspiracy beyond the commission of the first act, each overt act thereafter gives a new, separate, and distinct effect to the conspiracy, and constitutes another agreement, so that a prosecution is not barred by the statute of limitations until three years after the commission of the last overt act alleged and proved." Hedderly v. United States, 9 Cir., 193 F. 561, 569; United States v. Kissel, 218 U.S. 601, 31 S.Ct. 24, 54 L.Ed. 1168.

■■ A conspiracy and overt acts may be charged in the indictment which are not within the three year period of the statute of limitations, but they must be limited to show only the conspiracy and its continuation. Such overt acts beyond the three year limit of the statute are not relevant to show guilt. To convict, an overt act must be alleged and proved which occurred within the three year statute of limitations.

■ There is "perhaps no crime an exact definition of which it is more difficult to give than the offense of conspiracy." 15 C.J.S., Conspiracy, § 35, p. 1057. One of the very old definitions and which is still in use is, "A conspiracy is * * * a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means." Hedderly v. United States, 9 Cir., 193 F. 561, 567; 15 C.J.S., Conspiracy, § 35, p. 1057.

■ One of the definitions of a criminal conspiracy and which seems to be easily understood is defined to be: "(1) An object to be accomplished. (2) A plan or scheme embodying means to accomplish that object. (3) An agreement or understanding between two or more of the defendants whereby they become definitely committed to cooperate for the accomplishment of the object by means embodied in the agreement, or by any effectual means. (4) In jurisdictions where the statutes so require, an overt act." 15 C.J.S., Conspiracy, § 35, p. 1058.

■ The defendants requested the following written charges which were refused by the court:

"20. The court charges you that if any of the Government's witnesses have exhibited prejudice or bias against this defendant, and satisfies you that they have not testified truly, and are not worthy of belief and you think their testimony should be disregarded, you may disregard it altogether."

"28. I charge you, gentlemen of the jury, that if any witness for the Government in this case has shown bias or prejudice against this defendant, and satisfies you he has not testified truly in this case, you may disregard his testimony altogether, and if the guilt of this defendant depends on such testimony, then find the defendant not guilty."

These two charges are good and their refusal was error unless they were covered by the oral charge given by the court, or by charges given at the request of the defendant. We do not find it necessary to compare the charges, since this error will not occur on another trial. Charge 30, while good, is an exact duplicate of charge 20.

There was no error committed in refusing the other charges requested.

What we have said will suffice, we think, as a guide for the court when the case is tried again. Other errors in the oral charge are not adverted to, since we conclude they will not occur on another trial. For the errors pointed out, the judgment of the court is reversed and remanded.