UNITED STATES of America, Plaintiff-Appellee,

v.

Sammie Lee DAVIS and Jasper Edward Baccus, Defendants-Appellants.

No. 75–1494.

United States Court of Appeals, Fifth Circuit.

June 17, 1976.

William Stephen Swayze, Jr., Dallas, Tex. (Court appointed), for Sammie Lee Davis.

Brian A. Eberstein, Dallas, Tex., for Jasper Baccus.

Frank D. McCown, U. S. Atty., Fort Worth, Tex., William F. Sanderson, Jr., Judith A. Shepherd, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge:

Appellants, Sammie Lee Davis and Jasper Edward Baccus, were charged in a single count indictment, returned on September 5, 1974, of conspiring, in violation of Title 18, U.S.C., Section 371, the general conspiracy statute, to knowingly and wilfully make and cause to be made false, fictitious and fraudulent statements and representations as to material facts in a matter within the jurisdiction of the United States Department of Labor, Manpower Administration, in violation of Title 18, U.S.C., Section 1001.[1] The indictment alleged that the conspiracy existed from May 20, 1969, to May 1, 1970, and that Davis and Baccus committed eight specific overt acts in furtherance of the conspiracy, only two of which were alleged to have occurred after August 13, 1969. Both appellants were found by a jury to be guilty as charged. This appeal from the judgment of conviction and sentence of each to five years confinement timely followed.

The defendants below moved for dismissal of the indictment prior to trial, and for judgments of acquittal both at the close of the government's case and at the close of all the evidence, asserting that the indictment failed to allege an offense within the five year general statute of limitations, Title 18, U.S.C., Section 3282. The district court denied each of the motions, as well as motions to strike overt acts 7 and 8[2] from the indictment.

Whether prosecution of the offense was barred by the five year statute of limitations is the primary issue on appeal. Davis and Baccus contend that the offense

---

1. Title 18, U.S.C., Section 1001 provides:

   "§ 1001. Statements or entries generally
   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

2. These overt acts, the only two actually alleging an occurrence within the five years prior to September 4, 1974 were as follows:

   "7. On or about September 8, 1969, SAMMIE LEE DAVIS and JASPER EDWARD BACCUS induced the Department of Labor Manpower Administration, to enter into the contract.
   "8. On or about September 22, 1969, SAMMIE LEE DAVIS and JASPER EDWARD BACCUS induced Harvey George Davisson to withdraw Behavioral Science Research Laboratories from the Contract."

charged in the indictment occurred prior to September 5, 1969, and that the prosecution commenced by the September 5, 1974 indictment was not within the five year limitation of § 3282. The government counters that the prosecution was commenced within the statute of limitations, since the government proved overt acts in furtherance of the conspiracy continuing as late as April 30, 1970. We conclude that the convictions are due to be reversed.

## I. THE FACTUAL SETTING

On May 20, 1969, appellant Davis, then Pastor of the Fellowship Baptist Church, met with Harvey George Davisson to discuss the possibility of entering into a contract with the Manpower Administration of the Department of Labor for training Dallas, Texas area hard-core unemployed to work in the dry cleaning business. At that time Davisson was the president of Behavioral Sciences Research Laboratories (B.S.R.L.) which was organized to formulate and implement educational programs to be utilized in conjunction with vocational training. At the May 20 meeting Davis represented to Davisson that he had prior experience in the formation and operation of "consortiums"[3] to train unemployed persons pursuant to Labor Department contracts and that he owned facilities for the training of persons in the dry cleaning trade. As a result of the meeting Davis, on behalf of Fellowship, Inc., and Davisson, on behalf of B.S.R.L., entered into an "Agreement of Association" to seek a contract with the Labor Department for the training of hard-core unemployed. In response to a request by Davisson, Davis recommended appellant Baccus, represented by Davis as owning a chain of dry cleaning stores, to be president of the consortium.

On June 25, 1969, the appellants and Davisson entered into an agreement to form the "Dallas Dry Cleaning Consortium" (Consortium) and to submit a contract proposal to the Department of Labor for the training of 450 hard-core unemployed to be skilled dry-cleaning employees. The Consortium Agreement provided that the Consortium would act as the prime contractor under the contract and that Fellowship, Inc. would locate and assist in screening individuals to participate in the program, establish a skills training program, and provide facilities for the training classes. B.S.R.L. was to establish a motivation program and a supervisory training program. As subcontractors Fellowship, Inc. and B.S.R.L. were to be paid by the Consortium for their services.

Appellant Baccus on behalf of Consortium submitted to the Department of Labor on July 16, 1969, a detailed proposal for the training of 450 persons at a maximum cost to the Department of $1,258,637. Under the terms of the proposal all trainees from the date of their entry into the program were to be employed by a participant in the Consortium. Pursuant to Labor Department requirements Baccus wrote to the Department on August 13, 1969, designating the 19 dry cleaning firms which had purportedly agreed to become members of the Consortium. Attached to this letter was a list showing the number of trainees each firm supposedly agreed to hire and train, and Consortium Agreements and Definitions of a Consortium purportedly signed by each of the 19 firms.

The Department of Labor accepted the contract proposal on September 8, 1969, thereby awarding J.O.B.S. MA-5 Contract Number 46-0-5013-001 to Consortium. The contract became effective on the date of acceptance and was to continue until March 7, 1971. During the interim between the letter of August 13, 1969, and the acceptance of the proposal by the Department on September 8, 1969, there were no com-

---

**3.** The term "consortium" is defined by the Department of Labor, Manpower Administration in the July 16, 1969 forms of agreement used here as follows:

"A consortium consists of two or more businesses that choose to enter into a single con-

tract with the United States Government for purposes of receiving assistance in the hiring, training and retraining of defined and certified disadvantaged persons."

munications between any member of Consortium and any officials of the Department of Labor concerning the proposed contract.

On September 22, 1969, Davisson, per Baccus' instructions, went to the Fellowship Baptist Church in anticipation of performing B.S.R.L.'s obligations under the contract. Davisson testified at trial that upon arriving at the church he was taken to a small unfurnished room and that no trainees were present. Shortly after he arrived Davisson attempted to speak with appellant Davis concerning the inadequate facilities, but Davis appeared unwilling to engage in conversation. Further, Davisson was told by someone that "he had better leave". That afternoon Davisson and two investors in B.S.R.L. met with the appellants and several other persons to discuss the problems encountered in the performance of the contract. Davisson testified that during this meeting the appellants told him that B.S.R.L. was to receive a disproportionate share of the monies paid out under the contract, and that they were displeased with B.S.R.L.'s plan to use taped lectures in the training sessions. Davisson further testified that one of the participants at this meeting told him "We are going to get you, Whitey",[4] and that he inferred from the tone of the meeting that if he and the B.S.R.L. investors "wanted to continue to be in good shape" B.S.R.L. should withdraw from the contract.

Following this meeting the appellants, Davisson, and the B.S.R.L. investors met with a contracting officer from the Department of Labor to discuss the conflicts which had arisen with regard to the services to be rendered by B.S.R.L. and those to be rendered by Fellowship, Inc., under the contract. The contracting officer testified that it was obvious to him that B.S.R.L. wanted to withdraw as a subcontractor from the contract. At the conclusion of this meeting the Labor Department contracting officer composed an agreement, signed by all parties, whereby Davisson's offer to withdraw B.S.R.L. from the contract was accepted "in the best interests of harmony and performance under the contract". Under this agreement Fellowship, Inc., agreed to assume B.S.R.L.'s obligations under the contract. The members of the Consortium, however, became dissatisfied with the performance of Fellowship, Inc., and at a meeting on April 2, 1970, voted to dismiss Davis and Fellowship as subcontractors under the contract.

A contracting officer of the Department of Labor wrote to appellant Baccus on April 20, 1970, informing him of the Department's intention to cancel the Consortium's contract in ten days unless the following conditions were complied with during that time:

(1) that all trainees be assigned to Consortium members' payrolls and paid their salaries, and that a list of all trainees and their employers be submitted to the Department;

(2) that time and attendance records and a payroll system be established;

(3) that a disbursement procedure for government funds be established;

(4) that a copy of the subcontract for supportive services as required under the contract be submitted to the Department.

In reply to the above letter Baccus wrote to the contracting officer on April 30, 1970. Baccus stated in his letter that the Consortium would comply with the second and third conditions in the Department's letter, but that it was unable to comply with the fourth condition because of Davis' non-performance of his duties as subcontractor. With regard to the first condition in the letter of April 20 Baccus asserted that although he had contacted all participants in the Consortium, they had refused to honor their agreements with the Consortium and to accept the number of trainees agreed upon. For this reason, according to Baccus, he was unable to submit a list of the number of trainees and the Consortium members to whom they were assigned. Upon receipt of Baccus' letter the contracting of-

---

4. The two appellants are Blacks; Davisson is a Caucasian.

ficer on behalf of the Department of Labor on May 1, 1974, cancelled the contract, and notified the Consortium of his action.

## II. THE STATUTE OF LIMITATIONS

■ In *Roberts v. United States*, 5 Cir. 1969, 416 F.2d 1216, 1220, we stated the essential elements of the crime of conspiracy under § 371 to be "an agreement by two or more persons to combine efforts for an illegal purpose and an overt act by one of the members in furtherance of the agreement," citing *United States v. Falcone*, 1940, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128; *Nelson v. United States*, 5 Cir. 1969, 415 F.2d 483; *Castro v. United States*, 5 Cir. 1961, 296 F.2d 540; *Duke v. United States*, 5 Cir. 1956, 233 F.2d 897. In a conspiracy prosecution brought under § 371 the government in order to avoid the bar of the limitation period of § 3282 must show the existence of the conspiracy within the five years prior to the return of the indictment, and must allege and prove the commission of at least one overt act by one of the conspirators within that period in furtherance of the conspiratorial agreement. *Grunewald v. United States*, 1957, 353 U.S. 391, 396–97, 77 S.Ct. 963, 969–70, 1 L.Ed.2d 931, 939–40; *Fiswick v. United States*, 1946, 329 U.S. 211, 216, 67 S.Ct. 224, 227, 91 L.Ed. 196, 200; *Pinkerton v. United States*, 5 Cir. 1944, 145 F.2d 252, aff'd 1946, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1002; *United States v. Albanese*, S.D.N.Y.1954, 123 F.Supp. 732, 734, aff'd, 2 Cir. 1955, 224 F.2d 879. Hence, preliminary to a determination of whether the statute of limitations bars prosecution for a conspiracy it is essential to delimit the scope of the conspiratorial agreement alleged in the indictment, "for it is that

which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy". *Grunewald v. United States*, supra, 353 U.S. at 397, 77 S.Ct. at 970, 1 L.Ed.2d at 939.

■ Essentially the indictment here charged that the appellants conspired to violate Title 18, U.S.C., Section 1001, *by agreeing to make false, fictitious, and fraudulent statements and representations to the Department of Labor, Manpower Administration.*[5] The indictment alleged and the government sought to prove at trial that five of the signatures on the Consortium Agreements and Definitions of a Consortium submitted to the Department of Labor were forged,[6] and that none of the alleged Consortium members had agreed to hire and train the number of trainees represented in Baccus' letter of August 13, 1969, to the Department.[7] All of these representations and statements, however, were made to the Department on or before August 13, 1969, and were incorporated into the Consortium's contract proposal. Thus, these acts occurred beyond the five year limit of the statute, and although they were competent to show the formation of the conspiracy and its continuation, in order to convict the government must have alleged and proved an overt act in furtherance of the conspiracy occurring on or after September 5, 1969, and thus within the five years prior to the return date of the indictment. *Pinkerton v. United States*, supra, 145 F.2d at 254.

Only two of the eight overt acts set forth in the indictment were alleged as occurring after September 5, 1969, and within the five

---

5. The charging part of the single count of the indictment read:

"That from on or about a date prior to May 20, 1969, and continuously thereafter until on or about May 1, 1970, . . . JASPER EDWARD BACCUS and SAMMIE LEE DAVIS defendants herein, did unlawfully, willfully and knowingly agree, combine, conspire and confederate among themselves and with each other and with diverse other persons . . to commit offenses against the United States, that is, to knowingly and willfully make and

cause to be made false, fictitious and fraudulent statements and representations as to material facts in a matter within the jurisdiction of the United States Department of Labor, Manpower Administration, an agency of the United States, in violation of Title 18, United States Code, Section 1001."

6. Under numbered Paragraph 16 of the indictment.

7. Under numbered Paragraph 17 of the indictment.

year period of limitations. The allegation of these two overt acts in the indictment was as follows:

"7. On or about September 8, 1969, SAMMIE LEE DAVIS and JASPER EDWARD BACCUS induced the Department of Labor, Manpower Administration to enter into the Contract.

"8. On or about September 22, 1969, SAMMIE LEE DAVIS and JASPER EDWARD BACCUS induced Harvey George Davisson to withdraw Behavioral Science Research Laboratories from the contract."

Paragraphs 18 and 19 of the indictment contained the only other references to events occurring within five years of its return date. We quote these two paragraphs in full:

"18. It was further part of the conspiracy that the defendants would induce Davisson to withdraw from the Consortium so that the defendants might better conceal their fraudulent scheme.

"19. It was further a part of the conspiracy that the defendants would cause the Consortium to fail to reimburse or fully reimburse certain dry cleaning firms which were members of the Consortium, for the provision of on-the-job training."

The government introduced evidence at trial indicating that at least one member of the Consortium was not fully reimbursed for expenses incurred in on-the-job training, and that B.S.R.L.'s withdrawal as a subcontractor to the Consortium was caused by the appellants and others. Finally, although not based on the indictment, testimony was presented by the government to the effect that many of the claimed members of the Consortium had not in fact joined that organization, indicating that Baccus' letter of April 30, 1970 contained false statements of fact.

■ The government asserts that the ultimate object of the conspiracy was to secure from the Department of Labor the payments under the contract, and hence that the conspiracy was not intended by the appellants to cease with the submission of the contract proposal containing the false statements. Thus, under the government's theory overt acts 7 and 8 were acts in furtherance of the conspiracy since it was necessary for the appellants to induce the Department to enter into the contract in order to obtain the payments, and further necessary to coerce B.S.R.L. to withdraw from the contract, thus concealing the existence of the conspiracy and ensuring continuation of the payments under it.

This theory will not withstand analysis, since it misconceives the nature of the offense actually charged. The charge was not a substantive one, that appellants made false statements to a department of the United States or falsified material facts to a department of the United States pursuant to a scheme, in violation of § 1001. Neither can the indictment be read as charging the appellants with conspiring to defraud the United States, in violation of § 371. See *United States v. Frank*, 2 Cir. 1974, 494 F.2d 145; *United States v. Hickey*, 7 Cir. 1966, 360 F.2d 127. Instead, the indictment by its lone count charged the appellants with an entirely different offense under § 371: conspiring to violate § 1001 by *knowingly and willfully making false statements* as to material facts of a matter within the jurisdiction of a department of the United States. The sole object of the conspiracy as charged was to make false statements and representations to the Department of Labor, and the only false statements and representations alleged in the indictment as made by the appellants to the Department were made on or prior to August 13, 1969.[8]

The allegation in Overt Act 7 of the indictment that the appellants on September 8, 1969, "induced the Department of Labor, Manpower Administration to enter

8. We express no views as to whether the facts proved by the government would have supported charges of the commission of any offense against the United States other than that specifically charged.

into the Contract" is not an allegation of an overt act by one of the conspirators in furtherance of the central object of the conspiracy to submit false statements to the Department. Although the contract itself was signed by representatives of the Department of Labor on September 8, 1969, any inducement of that action by the appellants occurred when the false statements and representations were submitted to the Department on or prior to August 13, 1969. Indeed, the United States Attorney conceded [9] that the appellants submitted the contract proposal to the Department prior to September 8, 1969, and that the government was unaware of any specific act by the appellants on September 8, 1969. Record on Appeal at 46. The fact that the appellants never corrected the false statements contained in the contract proposal does not make the conspiracy charged in the indictment a continuing one, and thereby extend the statute of limitations. *Fiswick v. United States*, supra, 329 U.S. at 216, 67 S.Ct. at 227, 91 L.Ed. at 200.[10] Neither was the limitation period extended because the Department of Labor relied upon the falsifications within five years prior to the return of the indictment. See *Bridges v. United States*, 1953, 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557. The conspiracy charged in this indictment had run its course with the submission of the false statements to the Department on August 13, 1969, and the subsequent issuance of the contract by the Department in reliance on the falsifications was not for purposes of the statute of limitations an overt act in furtherance of the conspiracy. See *United States v. Peterson*, 5 Cir. 1974, 488 F.2d 645. Cf. *Yates v. United States*, 1957, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356.

■ Unpersuasive also is the government's argument that Overt Act 8 of the indictment alleging that the appellants on September 22, 1969, "induced . . . Davisson to withdraw [B.S.R.L.] from the Contract" charges an overt act in furtherance of the described conspiracy. As noted, supra, numbered Paragraph 18 of the indictment alleged that it was part of the conspiracy "that the defendants would induce Davisson to withdraw from the Consortium so that the defendants might better conceal their fradulent scheme". In *Grunewald v. United States*, supra, the Supreme Court rejected the argument that the statute of limitations in a conspiracy prosecution is extended by proof of a subsidiary conspiracy to conceal and acts in furtherance thereof after the main criminal purpose of the conspiracy has been accomplished.

"We think that the Government's first theory—that an agreement to conceal a conspiracy can, on facts such as these, be deemed part of the conspiracy and can extend its duration for the purposes of the statute of limitations—has already been rejected by this Court in *Krulewitch v. United States* [336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790] [supra], and in *Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 [supra].

.     .     .     .     .

**9.** By a paper styled "Answer for a Bill of Particulars" filed to comply with the trial court's order granting in part the defendant Davis' Motion for Bill of Particulars.

**10.** The government's reliance on *Bramblett v. United States*, 1956, 97 U.S.App.D.C. 330, 231 F.2d 489, cert. denied, 350 U.S. 1015, 76 S.Ct. 658, 100 L.Ed. 874, is misplaced. The charge in *Bramblett* was the substantive violation of § 1001, and the indictment specifically charged that the defendant had used "a scheme" to make the false statements and representations. The D.C. Circuit in rejecting Bramblett's argument that the prosecution was barred by the statute of limitations stated:

"As we understand it the indictment does not merely charge the making of a false statement. To be sure, the statute would cover such a charge . . . But this indictment specifies a violation of a different portion of the statute. It alleges that defendant did 'falsify by a scheme a material fact' by wilfully and knowingly continuing the incorrect designation in effect into periods less than three years before the date of the indictment . . . A continuing crime of falsification by a scheme is thus charged and proved, and the period of limitations did not begin to run until the scheme ended."
231 F.2d at 491.

"The crucial teaching of *Krulewitch* and *Lutwak* is that after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment. As was there stated, allowing such a conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely. . . . Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases . . ."

*Grunewald v. United States*, supra, 353 U.S. at 399, 401–402, 77 S.Ct. at 971, 972, 1 L.Ed.2d at 940, 941–42.

■ The government asserts, however, that even if Overt Acts 7 and 8 were not acts in furtherance of the conspiracy as laid in the indictment, Baccus' letter of April 30, 1970, was an overt act in furtherance of that conspiracy, and that it is sufficient for purposes of the statute of limitations that the government prove the commission of any overt act whether or not alleged in the indictment. In support of this contention the government mistakenly relies on the decision of the Second Circuit in *United States v. Armone*, 2 Cir. 1966, 363 F.2d 385, cert. denied, 385 U.S. 957, 87 S.Ct. 398, 17 L.Ed.2d 303. The *Armone* holding relied

upon amounts to no more than that the substitution of an unalleged for an alleged overt act does not constitute a fatal variance, and that proof of an unalleged overt act will support a conviction of conspiracy.[11] The case did not deal with a statute of limitation question and of course did not hold that proof of an unalleged overt act could be used to extend the limitations period for prosecution of that conspiracy. *Id.* at 400. See *United States v. Albanese*, supra. Further, the prosecutions in *Armone* were for violations of the conspiracy provisions of the federal narcotics laws, Title 21, U.S.C., Sections 173, 174, *repealed* Pub.L. 91–513, Oct. 27, 1970, 84 Stat. 1291, and not for violations of the general conspiracy statute embodied in § 371. In a conspiracy prosecution for violating § 371 the statute of limitations must be computed from the date of the last overt act of which there is appropriate allegation and proof. *Fiswick v. United States*, supra, 329 U.S. at 216, 67 S.Ct. at 227, 91 L.Ed. at 200; *Brown v. Elliott*, 1912, 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136; *Pinkerton v. United States*, supra, 145 F.2d at 254. We hold therefore that *for purposes of the statute of limitations the overt acts alleged in the indictment and proved at trial mark the duration of the conspiracy.*

We do not reach the other points of error raised by appellant Davis. The prosecution of appellants was barred by the statute of limitations, and the motions for judgments of acquittal should have been granted by the district court.

REVERSED and RENDERED.

---

**11.** Citing dictum from *United States v. Negro*, 2 Cir. 1947, 164 F.2d 168. The *Armone* holding has no value as a precedent in this circuit in view of our repeated holdings that proof of a conspiracy must be based on *allegation* and proof of both the criminal agreement and of the commission by one of the conspirators of an overt act in furtherance of the conspiracy. See, e. g., *Huff v. United States*, 5 Cir. 1951, 192 F.2d 911, 914–15; *Pinkerton v. United States*, 5 Cir. 1944, 145 F.2d 252, 254, aff'd, 1946, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1002; *Roberts v. United States*, 5 Cir. 1969, 416 F.2d 1216, 1220; *Castro v. United States*, 5 Cir. 1961, 296 F.2d 540. See further *United States*

*v. Falcone*, 1940, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128.

In view of the fact that the indictment in *Armone*, as stated in the text, was laid under former §§ 173 and 174 of Title 21, which (as distinguished from Title 18, § 371) did not require allegation and proof of an overt act in furtherance of the conspiracy, it is difficult to understand the reason for allegations as to overt acts being included in the *Armone* indictment. We recognize of course that once the charge of commission of overt acts was included in that indictment problems of proof had to be dealt with by both the trial and appellate courts.