**UNITED STATES of America, Plaintiff,**

v.

**Douglas G. THOMPSON and Roger D. Thompson, Defendants.**

**No. 99–40019–01/02–DES.**

United States District Court, D. Kansas.

Dec. 20, 2000.

Gregory G. Hough, Office of United States Attorney, Thomas G. Luedke, Office of United States Attorney, Topeka, KS, for Plaintiff.

Melody J. Evans, Office of Federal Public Defender, Topeka, KS, Debra E. James, Hampton & Royce, L.C., Salina, KS, Ronald E. Wurtz, Office of Federal Public Defender, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the government's Motion for Reconsideration of Court's Order Granting Defendants' Motions to Dismiss for Post–Indictment Delay under the Statute of Limitations (Doc 82). The government wishes the court to reconsider three issues: (1) whether the court used the correct date to calculate the statute of limitations for the crime of conspiracy; (2) if the statute of limitations expired on a later date, whether the court should strike its discussion of the statute of limitations; and (3) whether the court's findings regarding the government's stated reasons for sealing the indictment and prejudice suffered by defendants should be clarified or reconsidered. Both parties have submitted briefs in this matter. For the following reasons, the government's motion to reconsider is granted in part and denied in part.

## I. BACKGROUND

On June 9, 2000, the court issued an order granting defendants' motion to dismiss for post-indictment delay under the statute of limitations. The court recites below the facts of the case as described in its memorandum and order:

The indictment charges that Douglas ("Doug") Thompson and Roger Thompson and others knowingly and unlawfully combined, conspired, confederated, and agreed to execute a scheme to defraud the Small Business Administration ("SBA"), an agency of the United States, use of the mail in furtherance of the scheme, and engaging in monetary transactions in criminally derived property, in violation of Title 18, U.S.C., §§ 2, 371, 1341, and 1957. Because the first alleged criminal act occurred on March 1, 1994, the five year statute of limitations expired on March 1, 1999. See 18 U.S.C. § 3282. The indictment was returned by the grand jury on February 10, 1999, one month before the statute of limitations was about to ex-

pire. Without any discussion on the record, Judge Sam A. Crow ordered the indictment sealed. The indictment was unsealed eleven months later on January 18, 2000.

The charges in this case stem from transactions which occurred between the SBA and Plaza Speedway, a business owned by brothers Doug and Roger Thompson. Defendants owned fifty percent of the corporation, and Bob More owned the other fifty percent. Plaza Speedway was formed in 1985 for the purpose of operating and leasing a dirt track racing facility near Junction City, Kansas. During June 1993, the Plaza Speedway property was significantly damaged by flooding. On January 18, 1994, defendants applied for a re-building loan from the SBA's Disaster Loan Program. Defendants made statements regarding the cost of necessary repairs. The SBA approved and issued a loan for approximately $75,000 to pay for repairs to the Plaza Speedway property.

In 1993, one of Plaza Speedway's tenants contacted the state health department and requested a groundwater assessment. The tests revealed that the water was contaminated. The contamination was allegedly caused by multiple chemical fire extinguishing practice sessions conducted over a period of years by the Army at Fort Riley. On October 13, 1995, Plaza Speedway filed an administrative claim with the Army for diminished property value, loss of revenue, and costs in developing an alternative water supply caused by the water contamination. The dispute was not resolved, and defendants filed a civil action for damages on behalf of Plaza Speedway on August 15, 1997.

During discovery, the depositions of Doug and Roger Thompson were taken on March 18, 1998, and April 22, 1998, respectively. The government claims it became apparent during these depositions to the United States Attorney defending the civil action that there was evidence of criminal activity on the part of Doug and Roger Thompson in connection with the SBA loan to Plaza Speedway. According to the government, the SBA loan proceeds were to be used "soley to rehabilitate or replace" Plaza Speedway property. The loan agreement prohibited Plaza Speedway from using the loan proceeds to pay officers of the company for performing work. The SBA refused to make defendants' proposed modifications to the agreement, including that Plaza Speedway perform all the work and use the loan proceeds to pay off an outstanding loan it owed to First State Bank. The evidence suggested that defendants used the loan money to buy out fifty percent shareholder, Bob More, and refinance the loan to First State Bank. The evidence also suggested defendants initiated a sham transaction in which Bret Young signed a statement, drafted by Doug Thompson, that his company, "Young Construction," would repair the Plaza Speedway property for $77,500. This statement was provided to the SBA in order to receive the loan.

Although the United States Attorney in the civil action knew the matters required further investigation in March 1998, a criminal file was not officially opened until February 2, 1999. A sealed indictment was returned on February 10, 1999, one month before the statute of limitations expired. The indictment was unsealed eleven months later on January 18, 2000. During this time, Plaza Speedway continued to operate. The defendants continued their daily life in the Junction City, Kansas, area, unaware of the indictment. In June 1999, Doug Thompson moved his law practice from Abilene, Kansas, to Chapman, Kansas. During the move, Doug Thompson destroyed files and documents that were more than five years old, including correspondence, phone logs, notes about conversations, tax records, and expenditures regarding the SBA loan. Doug Thompson testified that he would not have destroyed these

records if he had known of the pending criminal charges.

The civil action was scheduled to begin March 21, 2000. When the indictment was unsealed on January 18, 2000, the civil trial was continued. At the May 2000 hearing ("hearing"), Plaza Speedway's counsel in the civil action testified that he would attempt to continue the civil trial until the conclusion of the criminal trial.

■ The filing of a sealed indictment within the statutory period may serve to toll the statute of limitations even if the indictment is not unsealed until after the period has expired, provided the indictment was sealed for a legitimate prosecutorial purpose. *United States v. Watson,* 599 F.2d 1149, 1154 (2d Cir.1979) (citing *United States v. Michael,* 180 F.2d 55, 56–57 (3d Cir.1949)). In its memorandum and order, the court concluded that the indictment was not sealed for a proper purpose, the length of sealing was unreasonable, and defendants suffered prejudice. The court used March 1, 1994, the date of the first alleged criminal act, to determine that the indictment, "returned" on January 18, 2000, brought charges outside the five year statute of limitations. The government subsequently filed a motion to reconsider the court's ruling.

## II. STANDARD OF REVIEW

■ The standards governing a motion for reconsideration are essentially the same as those governing a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *Hilst v. Bowen,* 874 F.2d 725, 726 (10th Cir.1989). "Reconsideration is proper when there has been a manifest error of law or fact, when new evidence is discovered, or when there has been a change in the relevant law." *Resolution Trust Corp. v. Greif,* 906 F.Supp. 1446, 1456 (D.Kan.1995) (*citing All West Pet Supply Co. v. Hill's Pet Prods. Div.,* 847 F.Supp. 858, 860 (D.Kan.1994)). A motion to reconsider is not a mechanism to raise arguments that should have been raised in the first instance or to rehash arguments previously considered and re-

jected by the court. *Id.* at 1456–57. Whether to grant or deny a motion for reconsideration is committed to the sound discretion of the court. *Marx v. Schnuck Markets, Inc.,* 869 F.Supp. 895, 897 (D.Kan.1994) (*citing Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir.1988)).

## III. ANALYSIS

### A. Statute of Limitations

The government requests that the court reconsider whether the court used the correct date to calculate the statute of limitations for the crime of conspiracy. The crime of conspiracy charged under 18 U.S.C. § 371 is subject to a five year statute of limitation. *See* 18 U.S.C. § 3282. To determine the statute of limitations in conspiracy cases, the court is to use the date of the last overt act in furtherance of the conspiracy. *See Local Lodge No. 1424 v. N.L.R.B.,* 362 U.S. 411, 423 n. 15, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) ("the rule in conspiracy cases is that the statute of limitations only begins to run upon the commission of the last overt act in furtherance thereof"); *Fiswick v. United States,* 329 U.S. 211, 216, 67 S.Ct. 224, 91 L.Ed. 196 (1946) ("The statute of limitations, unless suspended, runs from the last overt act during the existence of the conspiracy."); *Brown v. Elliott,* 225 U.S. 392, 401, 32 S.Ct. 812, 56 L.Ed. 1136 (1912) ("the period of limitation must be computed from the date of the overt act rather than the formation of the conspiracy"). In its June 9, 2000, order, the court stated, "[b]ecause the first alleged criminal act occurred on March 1, 1994, the five year statute of limitations expired on March 1, 1999." The court agrees this analysis is flawed in that it relies on the first criminal act, rather than the last overt act in furtherance of the conspiracy.

The court must determine the date of the last overt act in furtherance of the conspiracy to calculate the expiration of the five-year statute of limitations. In its June 9, 2000, order, the court concluded

the indictment was not "returned" for the purposes of the statute of limitations until January 18, 2000. Therefore, the government must show the conspiracy continued to exist five years prior to the indictment being returned on January 18, 2000, and "at least one overt act in furtherance of the conspiratorial agreement was performed within that period." *United States v. Hauck*, 980 F.2d 611, 613 (10th Cir. 1992).

The parties disagree as to what act was the last overt act in furtherance of the conspiracy. Defendants argue the last overt act specifically alleged in the indictment and committed to further the conspiracy occurred on April 4, 1994, and, therefore, the statute of limitations expired on April 4, 1999. The government argues the depositions of Douglas G. Thompson, on March 18, 1998, and Roger D. Thompson, on April 22, 1998, although not specifically alleged in the indictment, were overt acts in furtherance of the conspiracy, and, therefore, the statute of limitations expired on April 22, 2003.

The court finds the last overt act in furtherance of the conspiracy occurred on April 4, 1994. In arriving at this conclusion, the court resolves two issues in defendant's favor: (1) whether the indictment sufficiently alleged that an overt act occurred in 1998; and (2) whether the 1998 acts were overt acts in furtherance of the conspiracy.

## 1. Sufficiency of the Allegation in the Indictment

■ Defendant first argues the indictment failed to allege an overt act in furtherance of the conspiracy within the limitations period. The law is clear that "[i]n a conspiracy prosecution for violating section 371, the statute of limitations must be computed from the date of the last overt act of which there is appropriate allegation and proof." *United States v. Davis*, 533 F.2d 921, 929 (5th Cir.1976). *See Fiswick v. United States*, 329 U.S. 211, 216, 67 S.Ct. 224, 91 L.Ed. 196 (1946) ("The overt acts averred and proved may thus mark the duration, as well as the scope of the conspiracy."); *Hudspeth v. McDonald*, 120 F.2d 962, 965 (10th Cir.1941) ("it is necessary to allege and prove an overt act"). The issue presented in this case is whether an indictment charging a conspiracy under section 371 must allege at least one specific overt act occurring within the five year statute of limitations period.

There is no precedent on this specific issue in the Tenth Circuit.[1] However, other circuits have addressed this issue. In *United States v. Davis*, the defendant argued the district court erred in denying the defendant's motion to dismiss the indictment because the indictment failed to allege an offense within the statute of limitations. *Davis*, 533 F.2d at 923. The government argued it was sufficient for • the statute of limitations that the government prove the commission of any overt act whether or not alleged in the indictment. *Id.* at 929. The Fifth Circuit held the government could not satisfy the statute of limitations by proving a timely overt act at trial that was not alleged in the indictment. *Id.* In arriving at its decision, the court distinguished the Second Circuit case relied upon by the government, *United States v. Armone*, 363 F.2d 385 (2d Cir.1966), because *Armone* dealt with the substitution of proof of an unalleged overt act for an alleged overt act during trial

---

1. The Tenth Circuit previously addressed this issue in *United States v. Stoner*, 98 F.3d 527 (10th Cir.1996). In *Stoner*, the three judge panel agreed an indictment that does not allege that the conduct constituting the conspiracy occurred within the statute of limitations period is subject to dismissal on its face. Judges Porfilio and Henry determined the indictment sufficiently alleged an overt act occurred within the limitation period, although the specific act was not identified. Judge Briscoe, in her dissent, determined the indictment failed to allege a specific overt act occurring within the statute of limitations. On rehearing en banc, an evenly divided court determined the portion of the opinion discussing the sufficiency of the indictment was without precedent. *United States v. Stoner*, 139 F.3d 1343 (10th Cir.1998).

and involved a prosecution for conspiracy under federal narcotics laws and not for general conspiracy under section 371.

▮ Other circuit courts have also concluded that the indictment must allege an overt act occurring within the statute of limitations. In *United States v. Butler,* 792 F.2d 1528 (11th Cir.1986), the Eleventh Circuit distinguished between non-overt act conspiracy and overt-act conspiracy charges, such as those under section 371:

> We hold that on a non-overt-act conspiracy charge, the indictment satisfies the requirements of the statute of limitations if the government alleges and proves, at trial or pretrial, that the conspiracy continued into the limitations period. We further hold that on conspiracy charges which require listing of overt acts, the statute of limitations is satisfied if the last overt act **alleged and proven occurs within the limitations period.**

*Id.* at 1532–33 (emphasis added). In *United States v. Dolan,* 120 F.3d 856 (8th Cir. 1997), the Eighth Circuit concluded: "[t]he government, to prevent the indictment from being found defective on its face, 'must allege and prove the commission of at least one overt act by one of the conspirators within [the five-year] [limitation] period in furtherance of the conspiratorial agreement.'" *Id.* at 864 (quoting *Davis,* 533 F.2d at 926). The court finds these cases persuasive. To satisfy the statute of limitations as to the conspiracy count, an indictment must set forth at least one overt act that occurred within the statute of limitation period.

▮ The indictment in this case must allege at least one overt act in furtherance of the conspiracy occurring on or after January 18, 1995. Count 1 of the indictment provides as follows:

### COUNT 1

5. Commencing in 1994, and continuing until 1998, the exact dates being unknown to the grand jury, in the District of Kansas and elsewhere, **DOUGLAS G. AND ROGER D. THOMPSON,** the defendants herein, and others, knowingly and unlawfully combined, conspired, confederated, and agreed to commit a crime against the United States; that is, the execution of a scheme to defraud the SBA, an agency of the United States of America, and the use of the mail in furtherance and execution of the scheme, in violation of Title 18, United States Code, Sections 2 & 1341.

### THE SCHEME

6. **DOUGLAS G. AND ROGER D. THOMPSON** devised and intended to devise a scheme and artifice to defraud the SBA through a series of sham transactions used to conceal and disguise the facts that more than $75,500 in loan proceeds, obtained through the SBA, were not used in accordance with their agreement, but were in fact used for their personal benefit, including, expanding their ownership in Plaza Speedway by buying out a 50% shareholder, Roy G. More, a.k.a. Bob More; obtaining a more favorable interest rate than a prior loan on the Plaza Speedway; and the purchase of other property unrelated to their racing business.

### Overt Acts of the Conspiracy

7. In furtherance of the conspiracy and to effect its objects, the defendant, **DOUGLAS G. and ROGER D. THOMPSON,** committed and caused to be committed overt acts, as set forth below, and including the following federal offenses, Counts 2 through 9, which are incorporated herein by reference.

The indictment then proceeds to describe, in detail, seven overt acts in furtherance of the conspiracy, all of which occurred between January 18, 1994, and April 4, 1994.

Although the indictment alleges that the section 371 conspiracy continued "until 1998, the exact dates being unknown to the grand jury," the indictment does not list any specific overt act occurring in 1998. The indictment does not mention the April 1998 deposition testimony relied upon by

the government, nor does the indictment allege concealment as an objective of the conspiracy. The "until 1998" language is followed by a specific list of overt acts occurring from January 18, 1994, to April 4, 1994. This list is exclusive. The indictment states "[i]n furtherance of the conspiracy and to effect its objects, the defendants, **DOUGLAS G. and ROGER D. THOMPSON**, committed and caused to be committed overt acts, as set forth below." All the overt acts are "set forth below." There is no suggestion that unlisted overt acts were also committed in furtherance of the conspiracy. The court finds the indictment fatally defective because it fails to allege a specific overt act occurring on or after January 18, 1995.

## 2. Were the Overt Acts in Furtherance of the Conspiracy?

Even if the meager "until 1998" language was sufficient to allege an overt act within the statute of limitations period, the court finds the acts relied upon by the government were not overt acts in furtherance of the conspiracy.

In *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), the Supreme Court drew a line between a conspiracy to accomplish a certain criminal purpose and an effort to cover it up. "A vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *Id.* at 405, 77 S.Ct. 963. The reason for such a distinction is obvious:

> Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators. For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world. And again, every conspiracy

will inevitably be followed by actions taken to cover the conspirators' traces. *Id.* at 402, 77 S.Ct. 963.

The last overt act specifically referenced in the indictment occurred on April 4, 1994. The government argues the depositions of Doug Thompson and Roger Thompson, taken four years later on March 18, 1998, and April 22, 1998, respectively, are overt acts in furtherance of the conspiracy. The government argues the 1998 depositions reveal false statements designed to conceal the conspiracy, including the refusal/failure of Doug Thompson to provide documentation regarding the SBA loan to the government lawyers in the civil lawsuit and his inconsistent statement that he did not think he possessed any SBA loan documentation.

The central purpose of defendants' alleged crime was to defraud the SBA to obtain loan money. The indictment described the scheme to defraud the SBA as a series of sham transactions used to conceal and disguise the fact that more than $75,500 in loan proceeds were not used in accordance with the agreement, but were used for defendants' personal benefit, including, expanding their ownership in Plaza Speedway by buying out a fifty percent shareholder, obtaining a more favorable interest rate than on a prior loan; and purchasing other property unrelated to their racing business.

The criminal objective of obtaining the loan and improperly using the proceeds was completed on April 4, 1994, in that the loan was fully processed, loan proceeds transferred, and loan proceeds divided among the conspirators. Defendants did not commit any acts in furtherance of the conspiracy after April 4, 1994. Defendants had completely distributed the loan proceeds and did not receive any additional money from the SBA. *See United States v. Knuckles*, 581 F.2d 305, 314 (2d Cir.1978) ("where a general objective of the conspirators is money, the conspiracy does not end, of necessity, before the spoils are divided among the miscreants"); *United*

*States v. Culoso,* 461 F.Supp. 128, 134 (S.D.N.Y.1978) (receipt of a finder's fee for obtaining a fraudulent loan from the SBA was an overt act in furtherance of the conspiracy). Defendants had no further communications with the SBA. *See United States v. Elkin,* 731 F.2d 1005, 1008 (2d Cir.1984) (fraudulent verification letter sent two years after defendant received improperly obtained money was part of scheme to defraud). Defendants did not pledge additional collateral or make further assurances that the loan would be repaid in order to "lull" the SBA into inactivity. *See United States v. Rubin,* 609 F.2d 51, 65 (2d Cir.1979) (attempts to lull defrauded bank into believing a loan will be repaid or that collateral is sufficient are overt acts in furtherance of a conspiracy to defraud). After four years of inactivity, the government argues defendants' 1998 deposition testimony was an overt act in furtherance of the conspiracy. However, the 1998 deposition testimony does nothing to further the objectives of the crime of defrauding the SBA. The only function of the 1998 deposition testimony was to avoid detection.

The court finds the last overt act in furtherance of the conspiracy occurred on April 4, 1994. Because the last overt act in furtherance of the conspiracy occurred on April 4, 1994, the five year statute of limitations expired on April 4, 1999. The indictment was returned on January 18, 2000, over nine months after the statute of limitations expired. Therefore, the court's analysis in its June 9, 2000, memorandum and order regarding the statute of limitations remains unchanged, except to the extent the court finds the correct date of the expiration of the statute of limitations is April 4, 1999, rather than March 1, 1999. Because the court finds its analysis remains unchanged, defendant's request that the court strike its discussion of the statute of limitations is denied.

### B. Findings Regarding the Sealed Indictment and Prejudice

The government also requests that the court reconsider or clarify its findings re-

garding the government's stated reasons for sealing the indictment and prejudice suffered by the defendants. The court has reviewed its analysis in light of the government's arguments and finds no reason to alter its findings on these issues.

**IT IS THEREFORE BY THE COURT ORDERED** that the government's Motion for Reconsideration of Court's Order Granting Defendants' Motions to Dismiss for Post–Indictment Delay under the Statute of Limitations (Doc. 82) is granted in part and denied in part. The motion to reconsider is granted to the extent the correct date of the expiration of the statute of limitations is April 4, 1999, rather than March 1, 1999. All other requests for relief are denied.