**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas Andrew GUERRO, Angelo Michael Marino, Lucien Joseph Provost, and Anthony Joseph Bottiglio, Defendants-Appellants.**

**Nos. 155, 156, 157, 158, Dockets 82–1103, 82–1131, 82–1137, 82–1139.**

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1982.

Decided Nov. 24, 1982.

Certiorari Denied Feb. 22, 1983. See 103 S.Ct. 1230.

Douglas E. Grover, Dept. of Justice, Brooklyn, N.Y. (Edward R. Korman, U.S. Atty., E.D.N.Y., Edward A. McDonald, Dept. of Justice, Brooklyn, N.Y., on brief), for plaintiff-appellee.

Thomas F. Clauss, Jr., New York City (Bert H. Nisonoff, Forest Hills, N.Y., Richard S. Berne, New York City, on brief), for defendants-appellants Guerro, Marino, and Provost.

Phylis Skloot Bamberger, New York City (The Legal Aid Soc., Federal Defender Services Unit, New York City, on brief), for defendant-appellant Bottiglio.

Before NEWMAN, KEARSE, and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

Defendants Thomas Andrew Guerro, Angelo Michael Marino, Anthony Joseph Bottiglio, and Lucien Joseph Provost appeal from judgments of conviction entered in the United States District Court for the Eastern District of New York, Jack B. Weinstein, *Chief Judge.* Guerro, Marino, and Bottiglio pleaded guilty to a single felony count of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 (1976). Provost pleaded guilty to a misdemeanor charge of conspiracy in violation of 18 U.S.C. § 371. Defendants' pleas were entered pursuant to a court-approved agreement preserving their rights to appeal the district court's refusal to dismiss the indictment on the ground that prosecution was barred by the statute of limitations, 18 U.S.C. § 3282 (1976).[1] For the reasons below, we affirm.

I

The focal point of the prosecution is the alleged sale by defendants Marino and Bottiglio of twenty-five pounds of military-type plastic explosives to FBI informant Joseph Cantalupo, in the presence of FBI Special Agent Nicholas Gianturco, on December 29, 1976. In an indictment filed on December 29, 1981, Marino, Bottiglio, Guerro, and Provost were charged with one count of conspiring to commit offenses against the United States in violation of 18 U.S.C. § 371, to wit: (1) receiving, concealing, and selling, etc., military-type explosive materials they had reason to believe were stolen, in violation of 18 U.S.C. § 842(h) (1976); (2) selling, without authority, military-type plastic explosives belonging to the United States, in violation of 18 U.S.C.

---

1. Guerro, Marino, and Bottiglio were sentenced to three years' imprisonment. Provost was sentenced to six months' imprisonment. All of the defendants except Guerro, who is incarcerated on unrelated charges, remain at liberty pending this appeal.

§ 641 (1976); and (3) knowingly transferring military-type plastic explosives without paying a transfer tax or filing the required written application, in violation of 26 U.S.C. § 5811, 5812, 5861(e) and 5871 (1976). The indictment alleged that the conspiracy had begun on or about November 2, 1976, and had ended on or about February 2, 1977. It alleged that in furtherance of the conspiracy the defendants had committed seven specified overt acts, among others. The latest overt acts specified were the December 29, 1976 sale by Marino and Bottiglio to Cantalupo, and a February 2, 1977 statement by Provost to Cantalupo "indicat[ing]" that the defendants had lost money on the explosives transaction because they had delivered five pounds too much.[2]

Defendants moved to dismiss the indictment on the ground that the prosecution was barred by the five-year period of limitations provided in 18 U.S.C. § 3282. They contended that the statement alleged to have been made on February 2, 1977, was merely a narrative of past events, and could not be construed as an overt act in furtherance of the conspiracy since the goal of the conspiracy had been achieved with the sale of the explosives on December 29, 1976. Accordingly, defendants argued that the last overt act properly alleged in the indictment occurred on December 29, 1976. On the premise that the day of the last overt act is counted as the first day of the limitations period, defendants contended that the December 29, 1981 indictment was filed one day past the end of the five-year limitations period.

The government opposed the motions on three grounds. First, it argued that even without any overt act later than December 29, 1976, the indictment was timely because, in computing the time within which a prosecution may be commenced, the first day counted is the day following that on which the offense was committed. Second, the

government argued that the indictment was timely because the alleged February 2, 1977 statement by Provost sought additional payment for the extra five pounds of explosives and hence was an act in furtherance of the conspiracy, and was obviously within the five-year period. Finally, the government contended that an overt act not listed in the indictment had occurred on December 30, 1976, namely, a statement by Marino to Cantalupo that because of the overdelivery on December 29, he wanted either payment of an additional $1,250 or the return of five pounds of explosives;[3] thus the government argued that even if the day of the last overt act were counted as the first day of the limitations period, and the February 2, 1977 act were excluded, the December 30, 1976 overt act would make the December 29, 1981 indictment timely.

The district court denied defendants' motions on the ground that the question whether the February 2, 1977 conversation was in furtherance of the conspiracy was for the jury to decide. The court also agreed with the government's contention that the limitations period begins on the day after that on which the last overt act has been committed.

Following the denial of their motions, defendants entered conditional pleas of guilty: Marino, Bottiglio, and Guerro to the conspiracy charge described above, and Provost to a misdemeanor conspiracy count charged in a superseding information against him. The terms of the defendants' conditional pleas, however, are not entirely clear.

There is no question that the plea agreement approved by the court permitted the defendants to preserve only a statute-of-limitations defense. Defendants contend, however, that they entered pleas of guilty only to a conspiracy that ended on Decem-

---

2. Negotiations had led to an agreement with Cantalupo to sell the explosives for $250 per pound. On December 29 Cantalupo paid $5,000 and the defendants apparently believed they were delivering twenty pounds. In fact they delivered twenty-five pounds.

3. The alleged December 30 conversation was reflected in an FBI report which the government submitted to the court. As to six of the seven overt acts specified in the indictment, the government submitted transcripts of tape recordings made by Cantalupo.

ber 29, 1976, and that the government is not entitled to rely on any events following that date in opposition to this appeal. Colloquy at the plea hearing, set forth in the margin,[4] suggests that the defendants believed they were so limiting the issue for appeal. The government, on the other hand, contends that the defendants' pleas do not demark what the government would have been entitled to prove at trial nor, therefore, what it may argue on appeal.

Fortunately, we need not parse the terms of the plea agreement, since we conclude that even if the last overt act in furtherance of the conspiracy occurred on December 29, 1976, the December 29, 1981 indictment was timely.

## II

Section 3282 of Title 18 provides, in pertinent part, that

no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

The long-established general rule is that a statute of limitations begins to run on the day following the day on which the event giving rise to the cause of action occurred. *Burnet v. Willingham Loan & Trust Co.,* 282 U.S. 437, 439, 51 S.Ct. 185, 75 L.Ed. 448 (1931).

"When the period allowed for doing an act is to be reckoned from ... the happening of any ... event, the day on which the event happened may be regarded as an entirety, or a point of time; and so may be excluded from the computation."

*Id.* at 439, 51 S.Ct. at 185 (quoting *Cornell v. Moulton,* 3 Denio 12, 16 (N.Y.Sup.Ct. 1846)). This principle has been applied in criminal as well as civil cases.[5] "The gener-

---

4. The colloquy, as best we can interpret it from a transcript that appears to be misworded, misphrased, and mispunctuated, included the following:

THE COURT: Now, you understand, Mr. Marino, that you can be imprisoned up to five years and fined up to $10,000, in addition?

DEFENDANT MARINO: Yes.

THE COURT: And the Government would have to prove beyond a reasonable doubt that you and at least one other, did conspire between November 1976 and February 1977, with at least one of the other people, Anthony Bottiglio, Thomas Guerro, Lucien Provost—

MR. NISONOFF [Attorney for Marino]: Judge, we have one minor problem, I think.

Our appeal [sic; plea?] is based upon the fact that we say that the last overt act that was committed was committed on December 29th.

And it will be upon that basis that we are going to go up to the Court of Appeals if, in fact, something took place on December 30th or February or sometime during the month of February 1977.

There will be absolutely no sense in us going up to the Court of Appeals—

[*See* note 7 *infra* for a hypothesis as to alternative punctuation of the Nisonoff statement.]

THE COURT: I understand that. He can say that on the elocution [sic], but this is the charge.

MR. NISONOFF: Yes, I understand, because the charge is, Judge—I am merely trying to point out as far as we are concerned, the conspiracy ended on December 29, 1976.

THE COURT: He is not—in other words, he is not pleading to any conspiracy that went beyond December 29th?

MR. NISONOFF: That's correct, your Honor. I think that would be probably true of all of the evidence [sic; defendants?]—although I don't speak for them.

THE COURT: Yes, well all of these pleas are being taken with that in mind. However, he is pleading to this very conspiracy and the only question is whether it ended on the 29th or the 2nd of February; is that correct?

MR. NISONOFF: That's correct, your Honor.

THE COURT: It is still the same conspiracy for purposes of pleading.

MR. NISONOFF: Yes. I just didn't want it to be in the record that he pleaded guilty to December 29, 1976.[?]

5. The general rule is reflected in Rule 45(a) of the Federal Rules of Criminal Procedure, which in pertinent part provides:

(a) Computation. In computing any period of time the day of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed is to be included ....

We do not suggest that Rule 45 is controlling, since Rule 45(a) extends a period that would otherwise end on a weekend or a holiday to the next nonholiday business day and Rule 45(b) permits the court, for good cause shown, to enlarge the time specified for any act; and we

al rule is that the day of the offense or act is excluded and the day on which the indictment is filed is included." *United States v. Mahler,* 181 F.Supp. 900, 903 (S.D.N.Y.1960) (footnote omitted); *see also United States v. Davis,* 533 F.2d 921, 926 (5th Cir.1976); *Wiggins v. United States,* 64 F.2d 950, 950–51 (9th Cir.), *cert. denied,* 290 U.S. 657, 54 S.Ct. 72, 78 L.Ed. 569 (1933); *De Hardit v. United States,* 224 F.2d 673 (4th Cir.), *cert. denied,* 350 U.S. 863, 76 S.Ct. 105, 100 L.Ed. 765 (1955).

While recognizing the general rule, defendants argue that a special rule applies in prosecutions for conspiracy. They rely on language in several cases to support their contention that the computation of the period must include the day of the last overt act. *See Grunewald v. United States,* 353 U.S. 391, 396, 77 S.Ct. 963, 969, 1 L.Ed.2d 931 (1957); *United States v. Brasco,* 516 F.2d 816, 818 (2d Cir.) (per curiam), *cert. denied,* 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975); *United States v. Stein,* 456 F.2d 844, 850 (2d Cir.), *cert. denied,* 408 U.S. 922, 92 S.Ct. 2489, 33 L.Ed.2d 333 (1972); *United States v. Sarantos,* 455 F.2d 877, 883 (2d Cir.1972); *United States v. Borelli,* 336 F.2d 376, 385 (2d Cir.1964); *Ex parte Black,* 147 F. 832, 841 (E.D.Wis.1906), *aff'd,* 160 F. 431 (7th Cir.1908). In each of these cases, however, the language relied on is at most dictum, for in none of them was the indictment filed on the anniversary of the last alleged overt act, and hence in none of them could the statute of limitations be found to have run by including within the limitations period the day of the last overt act.

*Grunewald v. United States,* for example, was a prosecution for conspiracy to defraud the United States by preventing the criminal prosecution of certain taxpayers for fraudulent tax evasion. The indictment, charging violation of 18 U.S.C. § 371, was filed on October 25, 1954, and the defend-

ants contended that the period of limitations, then three years, barred the prosecution. Noting the date on which the indictment had been filed, the Supreme Court stated as follows:

It was therefore incumbent on the Government to prove that the conspiracy, as contemplated in the agreement as finally formulated, was still in existence on October 25, 1951, and that at least one overt act in furtherance of the conspiracy was performed after that date. For where substantiation of a conspiracy charge requires proof of an overt act, it must be shown both that the conspiracy still subsisted within the three years prior to the return of the indictment, and that at least one overt act in furtherance of the conspiratorial agreement was performed within that period.

353 U.S. at 396–97, 77 S.Ct. at 969–970 (footnote omitted). *Grunewald* did not, however, turn on whether an overt act had occurred after October 25, 1951, rather than on that date, for the evidence was deemed sufficient for the jury to find that the goal of the conspiracy was the concealment of the taxpayers' frauds until 1952 and that acts designed to achieve this goal had occurred in 1952. Thus, the *Grunewald* Court's statement that the government was required to prove an overt act "after" October 25, 1951, was reflective of what in fact the evidence revealed, and we conclude that any implication that proof of an overt act *on* that date would not have sufficed was dictum at best.

As far as we are aware, all of the opinions that have repeated the *Grunewald* dictum or contained similar statements have likewise involved prosecutions in which the indictment was not filed on the anniversary of the last overt act. We know of no case in which an indictment, that would have been timely if the day of the last overt act were excluded from the computation, was

---

would doubt that these provisions could be invoked to authorize the filing of an indictment beyond the five-year deadline since "Congress has declared a policy that the statute of limitations should not be extended '[e]xcept as otherwise expressly provided by law.' 18 U.S.C.

§ 3282." *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). Rule 45's explicit statement of the general rule for identifying the first and last days of a specified time period is nevertheless instructive.

dismissed as time-barred because the day of the last overt act was included.

Indeed, at least one other circuit appears to have applied the general principle, that the day of the offense is excluded from the limitations period, to a conspiracy prosecution. In *United States v. Davis, supra,* the Fifth Circuit cited *Grunewald* for the general proposition that there must be proof of an overt act within five years of the indictment, and, in finding untimely an indictment filed on September 5, 1974, stated as follows: "in order to convict the government must have alleged and proved an overt act in furtherance of the conspiracy occurring *on or after September 5, 1969,* and thus within the five years prior to the return date of the indictment." 533 F.2d at 926 (emphasis added).

We agree with the *Davis* formulation since we find no sound basis for concluding that the general rule excluding the day of the offense should be inapplicable to conspiracy cases. Certainly the language of § 3282 does not distinguish between conspiracies and other crimes; it refers only to "offense[s]." Nor is there any indication in the legislative history that Congress intended to end the five-year period within which a prosecution could be brought at one time for substantive offenses but one day earlier for conspiracies. Rather, the teaching of the Court in *Burnet v. Willingham Loan & Trust Company, supra,* which has been applied to criminal prosecutions for substantive offenses, *see, e.g., United States v. Schwenoha,* 383 F.2d 395, 396 (2d Cir.1967), *cert. denied,* 390 U.S. 904, 88 S.Ct. 817, 19 L.Ed.2d 869 (1968); *Wiggins v. United States, supra; United States v. Mahler, supra,* 181 F.Supp. at 903 n. 9, seems equally applicable to substantive and conspiracy counts:

> We are seeking a measure of time, and therefore we have to translate the event into the language of time; and when, as here, there is no special reason for being more precise, the day is the unit, because

people generally measure periods of more than one day by days, months or years. When we say "four years after the return was filed," by common usage we think of four years after the day on which the return was filed, and it would seem that Congress was following common usage.

282 U.S. at 439, 51 S.Ct. at 185.

■ Finding no basis in precedent, statutory language, legislative history, or logic for defendants' assertion of a special time calculation for conspiracies, we conclude that with respect to the offense of conspiracy no less than with respect to a substantive offense, Congress was following common usage; and we apply the general rule that the day on which the offense was committed—as to § 371, a day on which an overt act was done in furtherance of the conspiracy—is excluded from the limitations period. Accordingly, we affirm the district court's denial of the motions to dismiss the indictment.

### III

Having ruled that the indictment was timely filed because the first day of the limitations period was the day after that on which the last overt act occurred, we need not reach the government's contentions that the indictment was timely because of the asserted overt acts of December 30 [6] and February 2. The possibility that we might have had to reach those issues, however, in the circumstances of the present case, points up once again the need for caution in the negotiation and acceptance of conditional pleas. We have urged such caution in the past with respect to pleas subject to multiple and uncertain conditions, *see, e.g., United States v. Burns,* 684 F.2d 1066, 1071–72 (2d Cir.1982), and have suggested that conditional pleas not be accepted if they raise issues that cannot be determined without full development at trial, *United States v. Thibadeau,* 671 F.2d 75, 79–81 (2d Cir.1982), or if they raise issues that are not clearly dispositive of the case, *United States*

---

**6.** Defendants contend, relying on *United States v. Davis, supra,* 533 F.2d at 929, that the December 30 act may not be considered in opposi-

tion to their motions because it was not identified as an overt act in the indictment. We need not decide this question.

*v. Lace,* 669 F.2d 46, 53 n. 5 (2d Cir.1982); *id.* at 57 n. 7 (Newman, J., concurring).

In the present case, if we had ruled that the first day of the limitations period was the day of the offense, that ruling would not have been dispositive of this case if an overt act in furtherance of the conspiracy occurred after December 29. The district court ruled that the question whether Provost's February 2 statement was in furtherance of the conspiracy rather than merely a retrospective narrative was for the jury to decide. This ruling was appropriate, but to the extent that the issue of the February 2 statement remained open, acceptance of a conditional plea reserving that issue was less appropriate.

The defendants' argument that their pleas · were premised on the elimination from consideration of any acts after December 29 presents other complications. Although the colloquy appears to reflect an intention on the part of the defendants to bar the government's resort to post-December 29 acts,[7] and it appears that the court so understood defendants' intent, it is unclear that the court accepted the limitation, *see* note 4 *supra.* And it seems doubtful that the government had agreed to the limitation or that it understood the court to accept the pleas on that restrictive basis. Hence the precise conditions attached to the plea are anything but clear.

We are thus constrained here to reiterate our advice of caution. A conditional plea that reserves for appeal issues that cannot be decided without full development at trial is inappropriate. And as to a conditional plea that properly reserves only issues that will be dispositive and are ripe for appellate review, the precise terms and conditions of the plea should be embodied in a written stipulation or set forth accurately [8] in the transcript of record. If the plea is conditioned on the government's abandoning any of its pertinent theories, the record should so indicate with clarity.

The judgments of conviction are affirmed.

---

7. Giving defense counsel's statement somewhat more likely phrasing and punctuation than appears in the transcript, *see* note 4 *supra,* it appears that Marino's counsel stated as follows:

> Our [plea] is based upon the fact that we say that the last overt act that was committed was committed on December 29th.
> And it will be upon that basis that we are going to go up to the Court of· Appeals[.]

[I]f, in fact something took place on December 30th or February or sometime during the month of February 1977[,] [t]here will be absolutely *no sense in us going up to the* Court of Appeals—

8. We suggest that the parties review the transcript for accuracy in order to present the reviewing court with a correct statement of the conditions.