**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joe B. BUTLER, David R. Holmes, Donnie Waites, Defendants-Appellants.**

No. 85–7021.

United States Court of Appeals, Eleventh Circuit.

July 7, 1986.

Rehearing and Rehearing En Banc Denied Aug. 11, 1986.

---

Al Pennington, Pennington, McCleave & Patterson, Mobile, Ala., for Butler.

Barry Hess, Hess, Atchison & Horne, Richard M. Crump, Mobile, Ala., for Holmes.

J. Stephen Salter, Groenendyke & Salter, Birmingham, Ala., for Waites.

J.B. Sessions, U.S. Atty., Gloria Bedwell, Asst. U.S. Atty., C.S. White-Spunner, Jr., Mobile, Ala., for plaintiff-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and ALAIMO *, Chief District Judge.

HATCHETT, Circuit Judge:

Appellants, Joe Butler, Donnie Waites, and David Holmes, challenge their convictions for conspiracy to import marijuana, in violation of 21 U.S.C. § 963, and conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846 on grounds involving introduction of evidence, severance, statute of limitations, and sufficiency of evidence. We affirm.

FACTS

On the morning of July 12, 1979, a United States Coast Guard cutter, on routine patrol in the Yucatan Straits, boarded the fishing vessel MORNING STAR. After discovering 25,000 pounds of marijuana on board, Coast Guard officers arrested the crew members. None of the appellants were aboard the vessel. An agent of the Drug Enforcement Administration recognized the name of one of the crew members as the same name in which a vehicle was registered which was under surveillance at the Rod and Reel Fish Camp (Rod and Reel) in Ocean Springs, Mississippi. Apparently, however, the government did not at that time conduct any substantial investigation of the link between the seizure of the MORNING STAR and the activities taking place at the Rod and Reel.

* Honorable Anthony A. Alaimo, Chief U.S. District Judge for the Southern District of Georgia,

In 1982, after being arrested on unrelated charges, Robert Bosarge began providing the government information regarding various drug smuggling ventures. Bosarge, who was also involved in the MORNING STAR smuggling venture, provided the government with information which led to the indictment and arrest of the appellants. The indictment was filed on July 12, 1984, the fifth anniversary of the MORNING STAR seizure. At trial, Bosarge was the government's chief witness. The appellants were convicted on all counts of the indictment.

The appellants assert the following contentions: (1) that the government failed to commence action against them within the applicable statute of limitations; (2) that the government delayed instituting the proceedings in order to prejudice the appellants' defenses; (3) that the district court erred in failing to grant severances; and (4) that the district court erred in admitting certain evidence. Appellants Waites and Holmes also contend that insufficient evidence existed to support their convictions.

1. Statute of Limitations

The appellants' contentions regarding the statute of limitations may be summarized as follows: (1) The indictment was filed on July 12, 1984; therefore, the crimes charged must have occurred within the period between July 13, 1979, and July 12, 1984. (2) The indictment fails to state any date between July 13, 1979, and July 12, 1984, on which acts in furtherance of the conspiracy occurred. (3) The date of the last overt act in furtherance of the conspiracy was July 12, 1979; consequently, the indictment was filed one day late.

Title 18 U.S.C. § 3282 provides that unless otherwise expressly provided by law, no person shall be prosecuted for a non-capital offense "unless the indictment is found ... within five years next after such offense shall have been committed." The appellants contend, and we find that the

sitting by designation.

conspiracy was terminated on July 12, 1979, the date of the MORNING STAR seizure.

This issue is one of first impression in this circuit. Both parties have presented dictum in binding Fifth Circuit cases to support their contentions. In *United States v. Davis*, 533 F.2d 921, 926 (5th Cir.1976), in which an indictment was filed on September 5, 1974, the court stated, "in order to convict the government must have alleged and proved *an overt act* in furtherance of the conspiracy occurring *on or after* September 5, 1969, and thus within the five years prior to the return date of the indictment." (Emphasis added.) Conversely, in *United States v. Bethea*, 672 F.2d 407, 419 (5th Cir. Unit B 1982), where an indictment was returned on February 21, 1980, the court stated: "[i]n order for [the defendant's] conviction to have been proper, the jury must have found that one of the acts of racketeering activity occurred after February 21, 1975." In addition, in *United States v. Parker*, 586 F.2d 422, 427 (5th Cir.1978), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067 (1979), a case in which the last overt act alleged to support the conspiracy occurred on April 16, 1971, the court found that the indictment filed on April 15, 1976, was filed "a matter of a few hours before the applicable statute of limitations ran." (Footnote omitted.)

In *United States v. Edwards*, 777 F.2d 644 (11th Cir.1985), in which the last overt act alleged occurred on March 6, 1979, the grand jury returned an indictment on March 2, 1984, when "four days remained before the five-year deadline [of 18 U.S.C. § 3282] expired on the drug charges." 777 F.2d at 647 (footnote omitted). Thus, *Edwards* is as close as this circuit has come to resolving the anniversary date filing of an indictment. Our issue is compounded because the offenses charged are non-overt-act offenses, and thus, the government is not required to allege an overt act in order to obtain a conviction. Therefore, we need also resolve, in a non-overt-act context, the date from which to measure the five-year

period within which the government must obtain an indictment.

The above-mentioned cases are not controlling because they do not address our precise issue. The Second Circuit considered this precise issue in *United States v. Guerro*, 694 F.2d 898 (2d Cir.1982), *cert. denied*, 459 U.S. 1222, 103 S.Ct. 1230, 75 L.Ed.2d 463 (1983). In *Guerro*, the defendants were charged with conspiracy to sell explosives stolen from the United States, in violation of 18 U.S.C. § 371. The sale occurred on December 29, 1976. The indictment was filed on December 29, 1981. The Second Circuit held that the prosecution was not barred by 18 U.S.C. § 3282, stating that "[t]he long established general rule is that a statute of limitations begins to run on the day following the day on which the event giving rise to the cause of action occurred." 694 F.2d at 901 (citing *Burnet v. Willingham Loan & Trust Co.*, 282 U.S. 437, 51 S.Ct. 185, 75 L.Ed. 448 (1931)). The court further noted that "[t]his principle has been applied in criminal as well as civil cases. The general rule is that the day of the offense or act is excluded and the day on which the indictment is filed is included.' *United States v. Mahler*, 181 F.Supp. 900, 903 (S.D.N.Y.1960) (footnote omitted)." 694 F.2d at 901–02.

We find persuasive the Second Circuit's decision in *Guerro*. Because we find that the conspiracy in this case ended on July 12, 1979, we conclude that the indictment filed on July 12, 1984, was timely. Appellants' assertion that the indictment must allege an overt act to satisfy the statute of limitations is without merit. The law is well settled that neither 21 U.S.C. § 846 nor 21 U.S.C. § 963 require that an overt act in furtherance of the conspiracy be alleged. *See United States v. Elledge*, 723 F.2d 864, 866 (11th Cir.1984).

We hold that on a non-overt-act conspiracy charge, the indictment satisfies the requirements of the statute of limitations if the government alleges and proves, at trial or pretrial, that the conspiracy continued into the limitations period. *United States v. Coia*, 719 F.2d 1120, 1124 (11th

Cir.1983), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984). We further hold that on conspiracy charges which require listing of overt acts, the statute of limitations is satisfied if the last overt act alleged and proved occurs within the limitations period. In both instances (non-overt act or overt act), the day following the event is the beginning date for calculation, and the date of the filing of the indictment or information is included. Thus, in this case, the conspiracy continued until July 12, 1979; the day following, July 13, 1979, is the first day in the calculation. The indictment filed on July 12, 1984, was timely.

### 2. Delay in Prosecution

■ The appellants also contend that the trial court erred in denying their motions to dismiss because of prejudicial delay in commencing prosecution. They assert three bases in support of their position: Rule 48(b), Federal Rules of Criminal Procedure, the fifth amendment, and the sixth amendment.

Rule 48(b), Fed.R.Crim.P. provides:

If there is an unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

We are reminded that "prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty 'would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.'" *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752, 760 (1977) (quoting in part *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, 631 (1966)). The rule thus vests much discretion in the trial court, and dismissal is mandatory only if the defendant's constitu-

tional rights have been violated. *United States v. Edwards*, 577 F.2d 883, 887 n. 1 (5th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978).

■ We can quickly resolve the appellants' sixth amendment argument. The sixth amendment right to a speedy trial applies only after a defendant has been arrested, charged, or indicted. *United States v. Marion*, 404 U.S. 307, 312–13, 92 S.Ct. 455, 459, 30 L.Ed.2d 468, 474 (1971); *Stoner v. Graddick*, 751 F.2d 1535, 1541 (11th Cir.1985). Because the delay alleged in this case occurred prior to indictment, the sixth amendment is inapplicable.

■ Appellants also contend that the pre-indictment delay violated their fifth amendment due process rights. The "Due Process Clause has a limited role to play" in protecting against the prejudice of pre-indictment delay. *United States v. Lovasco*, 431 U.S. at 789, 97 S.Ct. at 2048, 52 L.Ed.2d at 758. To show a due process violation, the defendant has the burden of showing: (1) that the delay caused actual prejudice to the conduct of his defense, and (2) that the delay was the product of deliberate action by the government designed to gain a tactical advantage. *United States v. Warren*, 772 F.2d 827, 836 (11th Cir. 1985). *See United States v. Marion*, 404 U.S. at 321–27, 92 S.Ct. at 463–67, 30 L.Ed.2d at 479–82. This standard is "an exceedingly high one." *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir.1984). The district court found that appellants Butler and Waites had made no specific showings of prejudice sufficient to justify dismissal. Prejudice is not to be presumed because of a lengthy delay in initiating prosecution. *Stoner v. Graddick*, 751 F.2d at 1544. "Speculative allegations, such as general allegation of loss of witnesses and failure of memories, are insufficient to demonstrate the actual prejudice required...." *United States v. Radue*, 707 F.2d 493, 495 (11th Cir.), *cert. denied*, 464 U.S. 916, 104 S.Ct. 281, 78 L.Ed.2d 259 (1983) (quoting *United States v. McGough*, 510 F.2d 598, 604 (5th Cir.1975)). "When a defendant asserts prejudice because of the

loss of evidence, he must show that the loss impaired his ability to prove a meaningful defense." *Stoner v. Graddick,* 751 F.2d at 1544 (quoting *United States v. Solomon,* 686 F.2d 863, 872 (11th Cir.1982)). The district court determined that Holmes suffered prejudice due to the lengthy preindictment delay, but concluded that the government did not deliberately delay prosecution to gain a tactical advantage. At most, the evidence shows that the government failed to prosecute the case earlier because it "wasn't interested" in the case. The government's inaction in bringing the case is insufficient, standing alone, to establish that the government's actions were motivated by an attempt to gain a tactical advantage.

■ We hold that the district court did not abuse its discretion in refusing to dismiss the prosecution under rule 48(b). *See United States v. Mitchell,* 723 F.2d 1040, 1050 (1st Cir.1983).

### 3. Severance

■ Butler and Waites contend that the trial court erred in failing to grant them a severance. The record does not reveal that Butler moved for a severance. A defendant who fails to move for a separate trial has no cause to complain because of a joint trial absent a showing that he suffered actual prejudice as a result of the joint trial. *United States v. Washington,* 550 F.2d 320, 328 (5th Cir.), *cert. denied,* 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977). Butler has not satisfied this burden. Waites, however, moved for a severance on several occasions.

■ The prevailing judicial attitude is that persons who are charged together should be tried together. *United States v. Sans,* 731 F.2d 1521, 1533 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985). This is based largely on the desire to avoid multiple litigation and to conserve judicial resources. *United States v. Bynum,* 566 F.2d 914, 920 (5th Cir.), *cert. denied,* 439 U.S. 840, 99 S.Ct. 130, 58 L.Ed.2d 138 (1978) (citing *United States v. Morrow,* 537 F.2d 120, 136 (5th

Cir.1976)). The granting or denial of a severance is within the discretion of the trial judge, and will be overturned only for abuse of discretion. *United States v. Bovain,* 708 F.2d 606, 608 (11th Cir.), *cert. denied,* 464 U.S. 898, 104 S.Ct. 251, 78 L.Ed.2d 238 (1983). In order to show that the trial judge abused his discretion in failing to grant a severance, the appellant must demonstrate that the denial of a severance resulted in specific and compelling prejudice against which the trial court was unable to afford protection. *United States v. Riola,* 694 F.2d 670, 672 (11th Cir.), *cert. denied,* 464 U.S. 834, 104 S.Ct. 118, 78 L.Ed.2d 117 (1983). Only if the jury could not separate the evidence relevant to each appellant and render a fair and impartial verdict as to each should severance be granted. *United States v. Meester,* 762 F.2d 867, 883 (11th Cir.1985). The test is a stringent one. *United States v. Bovain,* 708 F.2d at 608.

■ When a defendant alleges prejudice resulting from a "spill-over" effect, as Waites has done here, the defendant must demonstrate the jury's inability to make an individualized determination as to each defendant. Demonstrating that acquittal would have been more likely had the defendant been tried separate or that the evidence was stronger against a codefendant does not satisfy the burden. Some degree of bias is inherent in a joint trial. *Meester,* 762 F.2d at 883–84.

■ The allegedly prejudicial evidence was presented during cross-examination of Holmes, after Waites had rested his case. The conversation made no reference to Waites, and Holmes testified that he had never met Waites prior to the trial. The court gave cautionary instructions to the jury to consider and weigh the evidence against each appellant individually. Such an instruction limits the likelihood of a "spill-over" effect. *Meester,* 762 F.2d at 884. Under these circumstances, Waites has not made a sufficient showing of compelling prejudice.

Waites also asserts that the trial court should have given appropriate instructions at the time it admitted into evidence the tape-recorded conversation. When a redacted version of the tape was played during Bosarge's testimony, the court instructed the jury not to consider the statements made therein as true, except as to Holmes. When the government again sought to introduce a more complete version of the tape during Holmes's cross-examination, Waites requested a relevance instruction, but the judge stated that the appellants were not entitled to a relevancy instruction in a joint trial if the evidence was relevant to any of the appellants. The judge thus gave no instructions.

■■■■ The record does not reveal that Waites requested any limiting instructions other than the relevancy instruction. Therefore, Waites must show that the failure to give the instruction amounted to plain error. *Meester*, 762 F.2d at 880. Plain error is error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings. *United States v. Russell*, 703 F.2d 1243, 1248 (11th Cir.1983). We do not find plain error in these circumstances.

### 4. Extrinsic Act Evidence

■■■ Appellants also contend that the trial court abused its discretion in allowing the government to introduce a tape-recorded conversation between Holmes and Bosarge that occurred three years after seizure of the MORNING STAR. The appellants contend that the tape contained no relevant evidence concerning the conspiracy alleged in the indictment. It was extremely prejudicial, however, in that it contained a general discussion regarding the importation of marijuana in which Holmes displayed a knowledge of smuggling. The acts were not relevant to any issue other than the appellants' character, and the probative value of this evidence was clearly outweighed by the undue prejudice to the appellants. We find this contention without merit.

■■■■ Much of the evidence was not extrinsic act evidence because it involved an uncharged offense which arose out of the same transaction or series of transactions as the charged offense. *United States v. Saintil*, 753 F.2d 984, 987 (11th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 2712, 86 L.Ed.2d 727 (1985). Thus, it falls outside of the proscriptions of Federal Rule of Evidence 404(b). *Saintil*, 753 F.2d at 988. In *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), this court's predecessor articulated the standard to be used in determining the admissibility of evidence of acts extrinsic to the indictment, under Federal Rules of Evidence 403 and 404(b). *Beechum* established a two-prong test for admissibility. The court must first determine whether the proffered testimony is relevant to an issue other than the defendant's character. If such relevancy is established, it must then determine whether the probative value of the evidence is substantially outweighed by the prejudice arising from it, and whether the proffered evidence is otherwise admissible under rule 403. *See also United States v. Kerr*, 778 F.2d 690 (11th Cir.1985) (citing *Beechum* with approval). The district court did not abuse its discretion in allowing this evidence. *See United States v. Mitchell*, 666 F.2d 1385, 1390 (11th Cir.), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1340 (1982). In addition, the trial court gave limiting instructions to lessen the prejudicial impact. *See United States v. Reme*, 738 F.2d 1156, 1164–65 (11th Cir. 1984), *cert. denied*, — U.S. ——, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985). The Supreme Court has recognized that the crucial assumption underlying the jury system is that juries will follow instructions given them by the trial judge. *Parker v. Randolph*, 442 U.S. 62, 72–73, 99 S.Ct. 2132, 2138–39, 60 L.Ed.2d 713, 723 (1979).

### 5. Sufficiency of the Evidence

Appellants Holmes and Waites also contend that the evidence was insufficient to support their convictions. We must view the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 79–80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942); *Duncan v. Stynchcombe*, 704 F.2d 1213, 1215 (11th Cir.1983). The evidence will be deemed sufficient unless we find that no rationale trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 322–25, 99 S.Ct. 2781, 2790–92, 61 L.Ed.2d 560, 576–77 (1979). We are mindful that "mere knowledge of the conspiracy in association with the conspirators is insufficient evidence to support a conspiracy conviction." *United States v. Russo*, 717 F.2d 545, 549 (11th Cir.1983).

■■■ As to Holmes, the testimony indicates that he had been at the Rod and Reel before and after the drug arrests. Holmes was also present at the time the MORNING STAR was purchased prior to the drug arrests. Bosarge testified that he met with Butler and Holmes before and after the arrest, and that Butler told Bosarge that if he needed anything, including money, to contact Holmes. Holmes, according to Bosarge, stated there was no hurry in getting back money that he had fronted because "as soon as the boat got in, we'll all have plenty of money," and that "we'll all have some good smoke." Further evidence establishes an intimate relationship between Holmes and Butler and an in-depth knowledge of the MORNING STAR venture both prior to and after the arrest. This evidence indicates Holmes's involvement in the venture.

The evidence as to Donnie Waites is less compelling. Bosarge testified that Waites had come to the Rod and Reel on several occasions and was able to identify Waites at trial. Waites himself, as well as other co-conspirators, allegedly told Bosarge that he was going to fly over the boat when it came in through the Yucatan. Bosarge further testified that he had first met Waites at Butler's house before the purchase of the Rod and Reel and that Bosarge, Waites, and others went out on another co-conspirator's boat, and that Bosarge showed how to get into the fish camp from the waterways. A member of the original crew of the MORNING STAR arrested in 1979 testified that he had met Waites prior to the arrest and was told that he would be flying over the boat as cover. The co-conspirator saw an airplane early on the morning of the arrest and once it became daylight, saw the same plane circling overhead. The co-conspirator had previously described Waites, and the jury was able to evaluate this description because counsel had Waites stand up during the closing argument for comparative purposes.

■■■ The uncorroborated testimony of an accomplice is sufficient to support a conviction if it is not on its face incredible or otherwise insubstantial. *United States v. Iacovetti*, 466 F.2d 1147, 1153 (5th Cir. 1972), *cert. denied*, 410 U.S. 908, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973). We find that not only was Bosarge's testimony not on its face incredible or otherwise insubstantial, but that it was corroborated by the other evidence adduced at trial. Although it was never established whether the plane flying above the MORNING STAR was acting as a spotter for the MORNING STAR, or whether Waites was in that plane, we find the evidence sufficient such that a reasonable trier of fact could have found beyond a reasonable doubt that Waites was involved in the conspiracy.

The judgments are affirmed.

**AFFIRMED.**