**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alfred J. KOONIN, Defendant–
Appellant.**

**No. 02–50350.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 2003.

Filed March 25, 2004.

Leo Branton, Jr., Los Angeles, CA, for the defendant-appellant.

Carol C. Lam, United States Attorney, Shane P. Harrigan, Assistant United States Attorney, United States Attorney's Office, San Diego, CA, for the plaintiff-appellee.

Before: NOONAN, TALLMAN, and RAWLINSON, Circuit Judges.

RAWLINSON, Circuit Judge:

The question we must decide is whether the statute of limitation begins to run on the day of the last overt act in furtherance of a conspiracy, or the following day. Agreeing with the Second and Eleventh Circuits, we hold that when computing the time within which a prosecution for conspiracy may be commenced, the statute of limitation begins to run the day *after* the last overt act is committed.[1] Our holding AFFIRMS the conviction in this case.

## I. BACKGROUND

South African businessman Ronald Abel had two constants in his life—his childhood friend, Alfred Koonin, and his hapless business partner, Sydney Kahn. In 1986, a business deal between Kahn and Abel went awry. Kahn subsequently fled to La Jolla, California, leaving behind a large debt as well as several angry investors, including Abel. Over the next few years, Kahn repeatedly promised, yet failed, to repay the debt. As interest accrued, Kahn's debt continued to grow. Keeping pace with that debt was Abel's growing anger. In an attempt to appease Abel's wrath and assuage his financial concerns, Kahn unwisely named Abel the beneficiary of his three life insurance policies. If

Kahn died, Abel stood to collect approximately $425,000.

By February 1996, Abel had decided to recoup his investment by collecting on these insurance policies. Of course, Abel could not collect as long as Kahn was alive. To hasten Kahn's demise, Abel hired Valter Nebiolo to travel from South Africa to California to kill Kahn. Nebiolo agreed to participate in the murder plot on the conditions that Abel share the insurance proceeds and supply airline tickets, expense money, a gun, a car for the trip to La Jolla, and a place to stay until the job was done. Abel agreed to all the conditions and gave Nebiolo the name and address of a friend who would provide Nebiolo with the gun, car, and lodging. That friend was Koonin.

On February 18, 1996, Nebiolo arrived in Los Angeles, California. Koonin met Nebiolo at the airport, drove him back to Koonin's apartment, and offered Nebiolo the choice of two handguns—a .44 magnum and a .357 magnum. Nebiolo examined the weapons, determined that both were loaded and in working condition, and chose the .357 as the murder weapon because it would be easier to conceal. Koonin also provided Nebiolo with a map to La Jolla and showed him the route to traverse.

The next day, Koonin helped Nebiolo rent a car and Nebiolo left for La Jolla. After watching Kahn's home and office for a few days, Nebiolo returned to Koonin's apartment in Los Angeles. The two discussed Nebiolo's reconnaissance trip and Nebiolo informed Koonin that the job would require a smaller, quieter gun. They also discussed Kahn, with Koonin assuring Nebiolo that Kahn was defrauding people in the United States just as he had done in South Africa. Koonin stated

1. Koonin raised other issues on appeal, which are resolved in a separate memorandum disposition filed contemporaneously with this opinion.

that Kahn deserved to be killed, describing him as someone who "had it coming." Koonin then left his apartment for about two hours. When he returned, Koonin had what Nebiolo needed—a smaller gun. Nebiolo examined the .25 caliber semi-automatic pistol and confirmed that it was fully functional.

On February 23, 1996, Nebiolo returned to La Jolla to kill Kahn. Although grazed by two bullets and struck by flying glass, Kahn survived the attack. Nebiolo fled the scene, returning to Koonin's apartment, but was arrested that same day and subsequently indicted by a grand jury. Koonin's role in the conspiracy became clear only after Nebiolo pled guilty and agreed to cooperate with the government as part of his plea agreement.

On February 23, 2001, exactly five years to the day after Nebiolo attempted to kill Kahn, a grand jury returned a superseding indictment charging Koonin with conspiracy to travel and cause others to travel in foreign commerce in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958(a); traveling and causing others to travel in foreign commerce in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958(a); the extortionate collection of debt, in violation of 18 U.S.C. § 894; false declarations before a grand jury, in violation of 18 U.S.C. § 1623;[2] and aiding and abetting, in violation of 18 U.S.C. § 2. Koonin was convicted on all counts.[3]

Koonin appeals his conviction, arguing—for the first time on appeal—that the Feb-

ruary 23, 2001 indictment was returned one day too late, thus barring prosecution of four of the five counts with which he was charged. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

When a statute of limitation began to run is a question of law typically reviewed de novo. *Orr v. Bank of America*, 285 F.3d 764, 780 (9th Cir.2002). However, Koonin did not raise this particular issue before the district court. Failure to comply with the statute of limitation is an affirmative defense that is generally waived if not raised at trial. *United States v. LeMaux*, 994 F.2d 684, 689 (9th Cir. 1993). Nevertheless, "[a]lthough the general rule in this circuit is that an appellate court will not consider an issue raised for the first time on appeal, we will reach the question if it is purely one of law and the opposing party will suffer no prejudice because of failure to raise it in the district court." *United States v. Thornburg*, 82 F.3d 886, 890 (9th Cir.1996) (citation omitted). Because the statute of limitation issue has been fully briefed by both parties, the government will not be prejudiced if we address it.

## III. DISCUSSION

Koonin was convicted of offenses that do not specify statutes of limitation. As a result, the five-year general statute of limitation for noncapital offenses applies. *See* 18 U.S.C. § 3282.[4] Nebiolo attempted

---

**2.** In the grand jury proceedings, Koonin testified that he did not know the purpose of Nebiolo's trip to the United States. He stated that he never saw Nebiolo with a gun and was not aware that Nebiolo had one. Koonin also told the grand jury that he had no contact with Abel between February 18, 1996, when Abel called to confirm that Nebiolo had arrived in Los Angeles, and February 23, 1996,

when Nebiolo was arrested in connection with the shooting.

**3.** Koonin was not named in Count Three of the superseding indictment.

**4.** 18 U.S.C. § 3282 provides, in pertinent part, that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not

to murder Kahn on February 23, 1996. The superseding indictment charging Koonin for his role in the murder-for-hire plot was returned on February 23, 2001. Koonin argues that the indictment was filed one day too late, barring prosecution of every count but one—the perjury offense committed when Koonin testified before the grand jury. The government presents two counter-arguments: (1) the conspiracy did not actually end until February 28, 1996, and (2) even if the conspiracy did end on February 23, 1996, the statute of limitation did not begin to run until the following day.

The indictment specifically charges that the conspiracy continued up to and including February 28, 1996, when Abel called Koonin to confirm that Nebiolo had left the United States. During that phone call, Koonin informed Abel that Nebiolo had been arrested for attempted murder. According to Koonin, Abel was stunned to hear the news. The two spoke again approximately two days later when Abel called to see if his name had been mentioned in the newspapers in connection with the shooting.

The government contends that the phone call regarding Nebiolo's departure was the last overt act committed in furtherance of the conspiracy, thereby triggering the statute of limitation. In short, the government asserts that the conspiracy ended, and the statute began to run, not when Nebiolo was arrested, but when all the conspirators realized that the murder-for-hire plot had been thwarted.

"[T]he Government's defeat of the conspiracy's objective will not necessarily and automatically terminate the conspiracy." *United States v. Jimenez Recio*, 537 U.S. 270, 275, 123 S.Ct. 819, 154 L.Ed.2d 744 (2003). In other words, "[w]here police

have frustrated a conspiracy's specific objective but conspirators (unaware of that fact) have neither abandoned the conspiracy nor withdrawn," then the conspiracy continues. *Id.* The police frustrated the conspiracy's specific objective when they arrested Nebiolo on February 23, 1996. However, Abel's first subsequent phone call to Koonin asked, in effect, if Nebiolo had successfully accomplished the object of the conspiracy. Abel's stunned reaction to the news of Nebiolo's arrest demonstrates that he was unaware the murder-for-hire plot had unraveled, thereby establishing that Abel had neither abandoned nor withdrawn from the conspiracy before that point.

Although Koonin learned of Nebiolo's arrest hours after it took place on February 23, 1996, no evidence suggests that Koonin abandoned or withdrew from the conspiracy at that time. "Mere cessation of activity is not enough to start the running of the statute...." *United States v. Borelli*, 336 F.2d 376, 388 (2d Cir.1964), *cert. denied*, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965). Instead, withdrawal requires "affirmative action, either the making of a clean breast to the authorities ... or communication of the abandonment in a manner reasonably calculated to reach co-conspirators." *Id. See also United States v. Lothian*, 976 F.2d 1257, 1261 (9th Cir.1992). Koonin undertook no such affirmative action.

If we accept the government's argument that the conspiracy continued until February 28, 1996, the indictment returned on February 23, 2001 was well within the five-year statute of limitation. However, even if we accept Koonin's argument that the last overt act occurred when Nebiolo shot Kahn and that the conspiracy ended with

capital, unless the indictment is found or the information is instituted within five years next

after such offense shall have been committed."

Nebiolo's arrest on February 23, 1996, rather than February 28, 1996, the indictment was still timely. Persuaded by the reasoning of the Second and Eleventh Circuits, we hold that the statute of limitation did not begin to run until the day *after* the shooting, and thus Koonin's indictment was filed on the last possible day of the limitation period.

In *United States v. Guerro,* 694 F.2d 898 (2d Cir.1982), the defendants were charged with conspiracy to sell explosives stolen from the United States. The sale occurred on December 29, 1976, and the indictment was filed on December 29, 1981. *Id.* at 899. The "[d]efendants moved to dismiss the indictment on the ground that the prosecution was barred by the five-year period of limitations provided in 18 U.S.C. § 3282." *Id.* at 900. "On the premise that the day of the last overt act is counted as the first day of the limitations period," the defendants in *Guerro,* like Koonin, argued that the indictment was filed one day too late. *Id.*

The government countered that when "computing the time within which a prosecution may be commenced, the first day counted is the day *following* that on which the offense was committed." *Id.* (emphasis added). The Second Circuit agreed with the government's argument, noting that"[t]he long-established general rule is that a statute of limitations begins to run on the day following the day on which the event giving rise to the cause of action occurred." *Id.* at 901 *(citing Burnet v.*

*Willingham Loan & Trust Co.,* 282 U.S. 437, 439, 51 S.Ct. 185, 75 L.Ed. 448 (1931)).

This principle, the Court noted, had been applied in criminal as well as civil cases. *Id. See, e.g., United States v. Davis,* 533 F.2d 921, 923, 926 (5th Cir. 1976) (holding that for an indictment returned on September 5, 1974 to be timely, the government had to prove that the defendant committed an overt act in furtherance of the conspiracy *on or* after September 5, 1969) (emphasis added).[5] As *Davis* illustrated, this principle was equally applicable to criminal prosecutions for substantive offenses as well as conspiracy charges. *See Guerro,* 694 F.2d at 903.

In *United States v. Butler,* 792 F.2d 1528 (11th Cir.1986), the defendants challenged their convictions for conspiracy to import and possess marijuana, contending that if the last overt act in furtherance of the conspiracy was committed on July 12, 1979, the July 12, 1984 indictment was filed one day too late. *Id.* at 1531. Finding the *Guerro* decision persuasive, the Eleventh Circuit held that in conspiracy cases—whether an overt or covert act is alleged—the day following the event is when the statute of limitation begins to run. *Id.* at 1532–33. In a case where the conspiracy continued until July 12, 1979, the following day was the first day of the limitation period, and the indictment filed on July 12, 1984 was timely. *Id.* at 1533.

■ This Circuit has long held that the day of the offense is excluded when determining the trigger date for the statute of limitation. *See, e.g., Wiggins v. United*

---

5. Koonin's reliance on *United States v. Bethea,* 672 F.2d 407 (5th Cir.1982) is unavailing. In *Bethea,* the Fifth Circuit, seemingly contradicting its prior holding in *Davis,* found that for an indictment filed on February 21, 1980 to be timely, the government had to prove that the defendant engaged in racketeering activity after, rather than *on or* after, February 21, 1975. *See id.* at 419. It is unclear whether the creation of an intra-circuit split of authority was a purposeful reversal of *Davis* or the product of inadvertent oversight. Given that *Bethea* cites *Davis* with approval and does not expressly state, or even imply, that the decision overrules *Davis,* the omission appears to be a drafting error. In any event, *Davis* is consistent with our precedent, *see infra.*

*States,* 64 F.2d 950, 950–51 (9th Cir.1933) (holding that an indictment returned on March 7, 1930 was not barred by a three-year limitation statute where the offense occurred on March 7, 1927); *see also United States v. Tawab,* 984 F.2d 1533, 1534 (9th Cir.1993) (per curiam) (holding that a five-year limitation period for a crime completed on February 15, 1986 expired on February 15, 1991.)

Admittedly, this Court has noted in conspiracy cases that the statute of limitation begins to run on the date of the last overt act alleged, implying that the day of the last overt act is included in determining when the statute of limitation was triggered. *See, e.g., Lambert v. Conrad,* 308 F.2d 571 (9th Cir.1962) (per curiam); *see also Bergschneider v. Denver,* 446 F.2d 569 (9th Cir.1971) (per curiam); *United States v. Charnay,* 537 F.2d 341, 354 (9th Cir.1976). However, because these cases did not involve prosecutions in which the indictment was filed on the anniversary of the last overt act, there was no need to analyze whether an indictment filed on this anniversary was timely. In these cases, expiration of the limitation period was not even close, and the finely tuned timing issue we now address was not presented. Because the cases that could be read to imply a holding contrary to the one we reach did not analyze the precise issue we now confront, they do not change our conclusion here. *See United States v. Joyce,* 357 F.3d 921, 924–25 (9th Cir.2004).

## IV. CONCLUSION

Persuaded by the reasoning of the Second and Eleventh Circuits, and in keeping with our own analogous precedent, we conclude that the day on which the last overt act was committed in furtherance of a conspiracy is excluded from the statute of limitation period. Thus, when computing the time within which a prosecution for conspiracy must commence, the clock starts the day after the last overt act is committed.

**AFFIRMED.**